IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VINCENT E. PULLUM, ) | CASE NO. 1:12 CV 434 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | WILLIAM H. BAUGHMAN, JR. |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. ) | |

## Introduction

Before me[1] is an action under 42 U.S.C. § 405(g) by Vincent E. Pullum seeking judicial review of the final decision of the Commissioner of Social Security denying Pullum's applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed a transcript of the administrative proceedings.[4] In accordance with my initial order[5] and procedural order,[6] the parties have briefed their

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 12.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

[6] ECF # 14.

positions and filed supporting charts and fact sheets.[7] In addition, the parties have participated in a telephonic oral argument.[8]

For the reasons that follow, I will find that the decision of the Commissioner was not supported by substantial evidence and so will be reversed, with the matter remanded for further proceedings.

## Facts

### A. Background

Pullum, who was 49 years old at the time of the decision of the Administrative Law Judge ("ALJ"), has a high school education and had worked previously cleaning cars for a rental car company and as a house painter.[9] He claimed that he was disabled by ankle pain and the swelling of his right wrist caused by a two-story fall from a ladder in 2003.[10] Pullum testified that he was now unable to stand or walk for long periods[11] and that he required a cane when he needs to walk more than 20 yards.[12] He further stated that, due to wrist pain and swelling, he could not hold his child with his right arm, tighten screws, or write as he

---

[7] ECF # 13 (Pullum's fact sheet), # 19 (Pullum's brief and charts); # 25 (Commissioner's brief and charts).

[8] ECF # 26.

[9] Transcript ("Tr.") at 28.

[10] *Id*. at 29-31.

[11] *See*, *id.* at 134, 151-52.

[12] *Id.* at 31-32.

used to.[13] He also testified that he was sometimes drowsy during the day from his pain medication.[14]

**B.      The ALJ's decision**

The ALJ, whose decision became the final decision of the Commissioner, found that Pullum had severe impairments consisting of degenerative joint disease of the ankles and right wrist.[15] The ALJ made the following finding regarding Pullum's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he is able to engage in no more than occasional pushing/pulling with the right arm and is unable to perform tasks requiring constant use of the right hand for fingering or repetitive activities in production-type jobs.[16]

Given that residual functional capacity, the ALJ found Pullum incapable of performing his past relevant work as a car shuttler and painter.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ

---

[13] *Id*. at 32-33.

[14] *Id.* at 34-35.

[15] *Id*. at 11.

[16] *Id.* at 12.

[17] *Id.* at 15-16.

determined that a significant number of jobs existed locally and nationally that Pullum could perform.[18] The ALJ, therefore, found Pullum not under a disability.[19]

**C.      Issues on judicial review**

Pullum asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Pullum raises the following two issues:

1.   The ALJ found at step four that Pullum had the residual functional capacity for a limited range of light work. This is unsupported by substantial evidence because the ALJ failed to give controlling weight to the opinion of Pullum's treating physician, Dr. Bangayan.[20]

2.   The ALJ's residual functional capacity assessment is unsupported by substantial evidence because it does not adequately address the limitations resulting from Pullum's advanced osteoarthritis of his dominant right wrist.[21]

## Analysis

**A.      Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

---

[18] *Id.* at 16-17.

[19] *Id.* at 17.

[20] ECF # 19 at 1.

[21] *Id.*

-4-

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[22]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[23] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[24]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[22] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[23] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[24] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

## 2. *Treating physician*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[25]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[26]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[27] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[28]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[29] Although the treating

---

[25] 20 C.F.R. § 404.1527(d)(2).

[26] *Id.*

[27] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[28] *Id.*

[29] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

-6-

source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[30] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[31] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[32]

In *Wilson v. Commissioner of Social Security*,[33] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[34] The court noted that the regulation expressly contains a "good reasons" requirement.[35] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

---

[30] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[31] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[32] *Id.* at 535.

[33] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[34] *Id.* at 544.

[35] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[36]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[37] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[38] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[39] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[40]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency

---

[36] *Id.* at 546.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

with other evidence in the case record.[41] Second, the ALJ must identify for the record evidence supporting that finding."[42] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[43]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[44] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[45] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[46] or that objective medical evidence does not support that opinion.[47]

---

[41] *Wilson*, 378 F.3d at 546.

[42] *Id.*

[43] *Id.*

[44] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[45] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[46] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[47] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[48] The Commissioner's *post hoc* arguments on judicial review are immaterial.[49]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[50]

- the rejection or discounting of the weight of a treating source without assigning weight,[51]

---

[48] *Blakley*, 581 F.3d at 407.

[49] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[50] *Blakley*, 581 F.3d at 407-08.

[51] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[52]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[53]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[54] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[55]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[56] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[57] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[58]

---

[52] *Id.*

[53] *Id.* at 409.

[54] *Hensley*, 573 F.3d at 266-67.

[55] *Friend*, 375 F. App'x at 551-52.

[56] *Blakley*, 581 F.3d 399.

[57] *Id*. at 409-10.

[58] *Id*. at 410.

In *Cole v. Astrue*,[59] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[60]

**B.     Application of standards – The decision to give little weight to treating physician James Bangayan, DPM, is not supported by substantial evidence.**

Here, the opinion of treating physician Dr. Bangayan was accorded little weight by the ALJ.[61] In so doing, the ALJ gave significant weight to an opinion by the state consulting physician W. Jerry McCloud, M.D., which opinion was heavily grounded in the report of state examining physician Eulogio Sioson, M.D. – an opinion the ALJ afforded some weight.[62] Essentially, the ALJ justified the less favorable weight given to Dr. Bangayan by stating that Dr. Bangayan's "own treatment notes do not reflect symptoms serious enough to warrant" the functional limitations contained in Dr. Bangayan's opinion.[63]

In that regard, I note first that Dr. Bangayan's treatment notes include more than mere recording of Pullum's complaints and subjective assessments of his functional capacity but

---

[59] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[60] *Id.* at 940.

[61] Tr. at 15.

[62] *Id*.

[63] *Id*.

-12-

also record a new MRI of the right foot and ankle, which Dr. Bangayan then compares in his notes with a prior MRI done four years previously[64] and which the ALJ does not discuss. In addition, Dr. Bangayan's treatment notes discuss at least three specific findings of "A.P. and lateral radiographs taken of both feet" in June, 2010[65] – again, a clinical detail not mentioned by the ALJ nor the opinions of the state physicians.

Further, Dr. Bangayan's treatment notes have extensive comments concerning direct examination of Pullum's ankle. Specifically, Dr. Bangayan records detailed clinical findings following range of motion and flex examination of the right ankle in June, 2010, and July, 2010, as well as documentation of pain from palpitating multiple locations in that area in June, July, August, and November of 2010, as well as January of 2011.[66]

As Pullum points out, the clinical findings set forth above from Dr. Bangayan's treatment notes – and not the mere reporting of subjective symptoms – support the conclusions reached by Dr. Bangayan in his functional capacity opinion and are consistent with the results of the state examining physician's findings.[67] In addition, as Pullum further notes, the opinion of the state consulting physician, Dr. McCloud, was formed without

---

[64] *Id*. at 232.

[65] *Id*. at 235.

[66] *Id*. at 231-33, 235.

[67] ECF # 19 at 12.

having seen the MRI of Pullum's right ankle and foot and without having reviewed Dr. Bangayan's treatment notes.[68]

In this case, where the treating physician's opinion was based on an extensive relationship with the claimant, and was supported by detailed clinical notes and objective evidence, it is difficult to understand how that opinion could be entitled to only little weight. This is especially the case when the opinion of a consulting physician, which opinion, as noted, was formed without the benefit of key objective evidence, was then relied on most heavily.[69]

Thus, where there is abundant clinical evidence supporting the claim that Pullum's ankle impairment is painful and restricts functioning, the ALJ, by either not mentioning such evidence or by failing to articulate a good reason for minimizing its importance, has not supported his decision to prefer the opinion of a consulting physician to that of a treating source. Accordingly, the matter will need to be remanded for further proceedings as concerns any functional limitations arising from the impairment of Pullum's right ankle.

In addition, the ALJ's treatment of the functional limitations imposed by the impairment of Pullum's right wrist is also problematic. The clinical evidence is that an MRI of the wrist at University Hospitals revealed a loss of cartilage such that fusion surgery was

---

[68] *Id.*

[69] I am also troubled that the opinion of Dr. Sioson, the state examining physician who found, by direct clinical observation, limited range of motion in Pullum's right ankle due to pain, was also given only little weight in that regard (Tr. at 15).

-14-

recommended for pain relief.[70] Further, Dr. Sioson's examination, which occurred after the MRI referenced above, also documented limited motion in the right wrist and decreased grip strength in the right hand.[71] Those restrictions, largely due to pain, led Dr. Sioson to conclude that work-related functions of carrying, handling, and lifting would be in the sedentary range.[72] Nevertheless, the opinion of the state consulting physician, Dr. McCloud, was that there were only occasional restrictions as to pushing or pulling[73] – an opinion that was adopted by the ALJ in the RFC.[74]

As with the right ankle, the decision of the ALJ here was to minimize the function limitations of pain in the right wrist documented by Stephen Lacey, M.D., of University Hospitals, who treated Pullum in 2009. Dr. Lacey's treatment notes, which the ALJ sets forth, provide clinical, objective evidence of "ligament tears, advanced osteoarthritis, and likely cartilage loss" in the wrist,[75] for which Dr. Lacey recommended "4 corner fusion [surgery] with scaphoid excision."[76]

---

[70] Tr. at 211.

[71] *Id.* at 214, 216.

[72] *Id.* at 213.

[73] *Id.* at 221.

[74] *Id.* at 12.

[75] *Id.* at 14.

[76] *Id.* at 211.

I note that Dr. McCloud's opinion that Pullum's wrist impairment is not substantially limiting is largely based on such things as references to notes in Dr. Sioson's report about the apparent ease with which Pullum took off his boots.[77] Even given that Dr. Lacey did not submit an opinion as to functional limitations, Dr. Sioson, who, unlike Dr. McCloud, actually examined Pullum, did opine that the work-related restrictions resulting from pain in the right hand and wrist would limit Pullum to "sedentary activities."[78]

Thus, similar to the situation described above concerning the ankle, the ALJ's decision here to prefer the conclusion of a non-examining source to that of an examining one was not clearly articulated, particularly when the clinical findings of Dr. Lacey are also considered.

Inasmuch as I will remand this matter for further proceedings due to the earlier issue of failure to comply with the treating physician rule, the ALJ on remand should revisit the handling of functional limitations of Pullum's wrist, given the documented clinical evidence cited above. To the degree that the functional limitations are not clear from the current record, the ALJ has the authority to obtain the assistance of a medical expert or of a different consulting examiner with a specialty closely matched to Pullum's impairments.

---

[77] *Id.* at 221.

[78] *Id*. at 213.

-16-

## Conclusion

Accordingly, substantial evidence does not support the finding of the Commissioner that Pullum had no disability. Therefore, the decision of the Commissioner denying Pullum disability insurance benefits and supplemental security income is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated: March 7, 2013                                        s/ William H. Baughman, Jr.
                                                            United States Magistrate Judge